Mr. Hughes. Thank you. Mr. Chief Justice, and may it please the Court, trademark tacking is a legal fiction that permits an owner to modernize a mark without losing priority. The proponent of tacking must demonstrate that the later mark does not unreasonably expand the legal effect of the earlier mark. To decide whether a change is a permissible modernization or an impermissible expansion, a court will consider the extent to which the new mark, if tacked, could unfairly squeeze out intervening users, and it will examine the circumstances in which past cases have permitted tacking. In assessing the legal effects of the marks, the Court will consider their oral and But tacking ultimately turns on the Court's judgment as to whether the legal effect of the new mark is sufficiently identical to that of the old mark. If viewed as a question of law, tacking would be unavailable here. The mark, Hana Bank, has a very different legal effect than the earlier mark, Hana Overseas Korean Club, as well as the intermediary mark, Hana World Center. Three factors together, we believe, support the conclusion that tacking should be viewed an issue of law for the Court. The nature of the issue itself is a legal comparison that courts are suited to make. Second, pragmatic considerations demonstrate that this is the kind of issue that should be put to a court. And third, the history of the issue demonstrates that a court has always resolved   Infringement is a question for the jury, right? There is a circuit split on that question. I think there are reasons one could think that there is the infringement is more like a factual question than tacking. If it is, then why wouldn't tacking be in the same category? Why aren't they similar? In infringement, you ask whether they are confusingly similar. Tacking has a more demanding standard, but it's the same type of inquiry. So if one is for the jury, why wouldn't the other be for the jury? I think there are a couple of reasons, Your Honor. The first reason is the nature of the inquiry I think is quite different. The second are some of the pragmatic considerations, the stare decisis effects. But moving to the first and most important issue, what's happening here is a legal comparison between the marks. It requires an assessment of the legal effect of the earlier mark compared against the later mark. It's not a factual comparison as to whether or not the marks would have the likelihood to confuse a jury or even simply if consumers would think that they are in fact the same kind of consumer impression. Rather, the test, as every court has formulated it, is whether or not the two marks are in fact legal equivalents.   same kind of consumer impression. Kennedy. So under your view, a district court's finding, they are reviewed in the court of appeals de novo? Yes, Your Honor. If this is a question of law, I think that finding of law would be reviewed de novo. Now, factual determinations that could be made subsidiary to that might not be. But in this case, the key issue would be reviewed de novo. Yes, Your Honor. Sotomayor. So isn't the key issue the commercial impression of and meaning how these marks were used and the commercial impression? Your Honor, I don't think that's the ultimate inquiry. That's one of the factors that will be considered. But that ultimately what the court must evaluate is whether or not they have the same legal effect. And I think an example might highlight this distinction. In the blue brief at page 5, the first example we give is the example of the American mobile phone paging. On the left side is the earlier mark, American mobile phone. On the right side is the mark that the company used three years later, American mobile phone paging. Now, if this were put to a jury and the sole question were, do these two marks seem to have the same consumer impression, I think many juries would say that they do, because the two marks use the same kind of font, they have the same star, they have the same stripes. I think a jury would likely think that these are from the same company and give off the same impression. However, the TTAB, the Trademark Trial and Appeal Board, viewing this as a question of law, denied tacking in this case and the Federal Circuit affirmed. I think that's the right answer and the right result. And the reasoning behind that is what happened in between these two marks. In between these two marks, a competitor arrived on the scene using the mark American paging. And the determination was made that American paging and American mobile phone are different marks. So the second in time, the American paging folks had the right to use that mark. But if tacking were allowed in this case, the effect would be years, a few years after the fact, to squeeze out the American paging company, even though they couldn't have known at the time that the American mobile phone was later going to try to register and then use the mark American mobile phone paging. So I think this all goes to show that if this is put to the jury, it's going to be a very different kind of result. And the inquiry can't simply be if a jury looks at it. Roberts, I'm sorry, I lost you a little bit. Why is it going to be a very different type of result? Well, Your Honor, my submission is that a jury looking at these two marks, if instructed just do they have the same consumer impression, at least many juries would find that they do. What the jury is not asking is whether or not they have the same legal effect in the marketplace. Is the jury going to be instructed in any way on what you just told us was the reason we should view those as differently? I don't think it would, Your Honor. I think the jury, when this is put as a factual question, as happened here, the jury is simply asked, do these have the same consumer impression? The government's position and the Respondent's position in this case is that's simply the sole inquiry, is do they have the same? Wouldn't there be evidence or instruction on, you know, consumer impression? You have to take into account what happened between these two marks? Well, I suppose, Your Honor, that an opponent attacking could try to introduce evidence to that effect, but the inquiry would not be looking to the legal effect between the two marks. But it seems to me that it's rather critical to the contrast you draw. I mean, what you're saying is the jury might get it right or the jury might get it wrong, and I could say, well, the Federal Circuit maybe got it right or the Federal Circuit got it wrong. But in terms of what the factual issues are going to be, and those would include what's happening between the two marks, it's – it seems to me the jury's got information just the way the Federal Circuit would. I don't see the difference between the two other than you think the one result is right and the other one would be wrong. Well, Your Honor, I think the nature of the inquiry, if it's put to a court, is different than just saying, do these marks look alike? The nature of the inquiry is, what is the legal effect of the earlier mark in the marketplace? Well, that isn't the – it seems to me the question put to the jury is not whether they look alike, but whether they create the same commercial impression. And it seems to me the instructions to the jury would say these are the two marks. Now, what you ought to know is that after the first mark, there was a competitor who came into commerce, called American Paging, and then the mark was changed from American Mobile Phone to American Mobile Phone Paging. Do you think that that second mark creates a different commercial impression than the first one? And I think a jury would say, heck, yes. Well, Your Honor, I think what a jury is not doing in that circumstance is it's not taking the prospective evaluation of the earlier mark against the later mark and figuring out just how much of a difference of a change there was. Well, but suppose that an important part of the case was that when the American Paging came along for a few years, everybody in the United States knew that. The first mark, not many people knew about. That, it seems to me, would be critical to the tacking inquiry, and that the consumer's knowledge, the consumer's expertise in knowing how consumers behave, how consumers think, is immensely valuable. Well, there are a few things about that, Your Honor. I think, first off, that the tacking inquiry is not going to look just at these sole particular marks that happen to exist, but a court is going to take a broader perspective and to think about what are the whole range of marks that would be preempted by the earlier and the later to figure out if what's happening, if this kind of tacking is reasonable in the circumstance. But I think there's an additional reason to think that this should be better viewed as a question of law, because similar to as the Court held in Markman, this would have stare decisis effects such that when a court makes a determination as to tacking, that would have application in future cases involving those same kinds of marks. If it's viewed as a question of law, one could get different results using the same marks across different cases. And I think this is the kind of question of fact. Yes, Your Honor, my apologies. If it's viewed as a question of fact, one could have different results. Sotomayor, any facts that you think a jury could determine here or should determine in this kind of case, in the tacking case? No, Your Honor. I think the whole inquiry should appropriately be submitted to a judge. If a judge thought that there were particular things that would be useful as advisory questions, I think it could be submitted. But I think in the usual case, a judge would make a decision. How is the judge supposed to know that what a consumer's impression would be? Well, Your Honor, I think that's generally, just to figure it out. Some evidence would have to be presented to him or her, right? It's possible. But I think that's similar to how a judge in the context of claim construction would understand what one's skilled in the art would be. They would look at the relevant considerations. They would put themselves into that frame of mind, and then they would make the appropriate determination based on all of the relevant factors. And in making that determination to a judge, I think it would be helpful to have that information. I thought that what the Court said, if we're trying to type these things, claim construction is construction of a written instrument. That's the kind of thing that judges do all the time. But to determine whether there is, what is the magic word, same continuing commercial impression to consumers, then the one that's better equipped to make that determination are people who are consumers, not jurors. Well, Your Honor, I think my response to that is that our fundamental contention is that inquiry, just what the impression of consumers, is not the decisive or ultimate determination here. The ultimate determination. But almost every Hornbook statement of it is, quotes that language. Even in the Federal Circuit case, it goes your way. So that is, the question is whether the old and new mark convey the same continuing commercial impression to consumers. Well, that's right, Your Honor. But also the Federal Circuit adds an additional factor, which is the oral and visual appearance. Do the two marks have the same oral and visual appearance? And what I think that shows is, the courts are not looking at this as a factual comparison. Well, if oral or visual appearance, shouldn't that also, oral and visual, to whom? To the people likely to buy these products, not to the judge. Well, Your Honor, I think what both of these factors are showing is that these are proxy ways the courts are looking to determine if we can view these same, these two marks as legally equivalent such that we can use this legal fiction of tacking that provides a very valuable benefit to the proponent of tacking, that they can effectively go back in time and alter their marks after the point. And so this is a constructive use theory, as the Ninth Circuit in particular identified. And that kind of determination, whether or not that legal benefit would flow, I think is the kind of thing that is appropriately put to a court, because it's going to turn on a judgment, not just of these marks, but what the relevant policy considerations are in the case, balancing the interest between the rights of the individual trademark owner to modernize or polish up their mark, as against everyone else in the marketplace who has an interest in not having marks expanded unduly years after the fact in a way that was entirely unpredictable. Ginsburg. But as I understand your brief, you say, no, the test really isn't same continuing commercial impression to consumers. You're saying it's the scope of the old and the new, and you can't use tacking to expand what the old would have meant. Yes, Your Honor. But if the answer to that is of course you can't, if you're saying that the old one was the first use, then whatever the scope of the old one is, is it, and you can't expand to it because of what you did later. I think that's right, Your Honor. I think what our point is that whenever a mark is changed, there might be some minor alteration, and a court must make the determination as to the amount that the preemptive scope has changed. Is it material, is it substantial, or is it the kind of small modernization that the tacking doctrine is designed to permit, such that the mark owner can make these small alterations? And that's what is ultimately the legal judgment. A court must look to see how much of a change has been made in the later mark, understand that both how much of a change there is, how close the change in those factors are to the earlier mark, and then consider how that applies in that particular circumstance. Ginsburg. Well, explain why I was wrong in saying all they have to know is what was the scope of the original mark, the one that counts. The later change can't expand what was the original. So that seems to answer what you say. You seem to say this same continuing commercial, that's not it. It's what is the scope of the old mark and what is the scope of the new mark. And if the answer is that the new mark can't go beyond the scope of the old, that's the end of that inquiry. Well, I think that's right, Your Honor. That is our position. I think that's a determination, though, that only a court can judge what the legal scope of those two marks are, because that requires a prospective assessment as to the range of marks. But what I was trying to suggest is you would never get to what the second mark scope is, because what the scope of the first one is determinative. Well, and I think as we put it, Your Honor, the scopes have to be virtually identical. We recognize that there could be some difference in change, because whenever a mark is changed, there will be some daylight between the two. We recognize that that is inherent in tacking, that there will always be some change, some degree of squeeze-out. The judgment determination is how much of a change, how much of a squeeze-out is permissible in one case such that the two marks can be viewed as legally the same mark to allow the tacking doctrine to operate. As another example, just to point to that, I think might come at this the opposite way, in the red brief at page 50, there is the example that the Respondents provide of D&J Master Clean. And this is an example where tacking was in fact allowed. In that context, the original mark was the mark Service Master. The second in time, competitor came on the scene using the mark Master Clean. The third in time, then, the Service Master altered their mark to Service Master Clean and used that mark to exclude the intervening competitor, the Master Clean competitor. And the Court permitted tacking, again, viewing this as a question of law. The reason it allowed tacking in that particular case was it sought to understand how close the later mark, the Master Clean mark, this intervening mark, was to the rights that the trademark owner had in its original mark of Service Master. And it made a judgment finding that it was reasonably foreseeable that Service Master would adopt the mark Service Master Clean, and thus there was nothing unfair in the marketplace to excluding Master Clean, that the implications of tacking in that case were in fact appropriate. And I think this further shows the kind of legal determination and reasoning that turns on the interest of all the market participants that is uniquely situated to the role that a court can play. Now, again, if I could just, what is it that you think a jury could not be instructed on in addressing that same consideration? What I think a jury would not be able to do the way that a court can is a jury cannot understand what the legal significance of Service Master compared to the legal significance of Master Clean. And what I mean by legal significance is what is the whole range of marks out there that each of those marks exclude, and then making the comparison to figure out just how much of a change has occurred in the marketplace, and then of that change, how close is that to the original mark such that could it have been known or foreseeable to the party who came in second on the scene that their mark would maybe later have been foreclosed from the marketplace. That's the kind of complex determination that is not put to a jury when tacking is viewed as a question of fact, and I don't think it's the kind of complex determination that requires these prospective judgments that we typically think is suited. It's not the kind of historical application of law to fact that would be in the infringement context or in the other circumstances where we would think that a jury would be appropriately suited to resolve the question. Additionally, though, we think that the pragmatic considerations bear heavily on this point. As I said earlier, the stare decisis implications of treating this as a consistent question of law is similar, I think, to what the Court held in Markman. Additionally, though, treating this as a  Scalia, do you think consistency appears in the judicial opinions that have treated this as a question of law? What is the judge – does he get cases and look at what other cases have said is tackable and what isn't tackable? Yes, Your Honor. In virtually every case, and certainly every case that has treated this as a question of law, courts will point to the three or five or ten most analogous examples and say this is the extent of the change that's been permitted and this is the extent of change that's not been permitted. And I do think this is one of those sorts of rules where it really gains content through the examples, through the past examples, illustrate just how narrow this doctrine is. Well, I guess that the stare decisis point is – is minimized, though, if you appreciate the fact that these marks are – each one is sort of sui generis. I mean, I don't know what precedential value I can get from looking at, you know, the dolphin changes on page 50, the fact that there is a case about the Loctite Corporation behind. I mean, I'm sure some are similar, but it seems to me that each one is significantly different. So I don't know the significance of stare decisis in this context. Well, I think it's significant in two ways. The first way is it's significant for the actual mark that is before the court. So if a authoritative court makes that determination, that would control in future cases involving those same kinds of marks. And when you have repeat litigants who often are having to protect their trademark, it's the kind of circumstance where having consistency from case to case, even when they are going after a different infringer or a different market competitor, I think is important. So it's similar. Scalia, even the ones you point us to, do not impress me as establishing any kind of – look on page 50, dolphin to dolphin. And the second dolphin is stylized in cursive writing, right? And that is upheld as tackable. Then on the next page, on 51, the second one from the bottom, it's the opposite progression. Turbo in cursive goes to Turbo in capital letters, and that is not permitted. I cannot for the life of me decide why the one should be permitted and the other should not be permitted. And I'd much rather blame it on the jury than on a court. Well, Your Honor, I think what happens in this presentation, one thing I'd point the Court to is that in 1989, the American mobile phone case that we began discussing set forth just how narrow this tacking doctrine is. And the cases that have followed have hewed very closely to the narrowness of this doctrine. I think the presentation here is a bit – gives a different impression because it takes cases that were prior to the American mobile phone era when tacking was used in a far more broad array of circumstances. I think when you look to the post-1989 cases, you find incredible consistency that tacking is denied in all but the most extraordinary case where the marks truly are effectively identical and have the same legal continuing impressions. So I do think if you look to some early cases, you see different results. But looking to the modern era of cases, there's far more consistency. And further, to the extent that any sort of predictability can be established by treating these marks as having legal authoritative effect and creating that kind of predictability to the marketplace, I think is better than the alternative of leaving it to simply a case-by-case, jury-by-jury determination. The next point I'd like to make is this has always historically been treated as a question of law for a court. We've taken – we've looked back, and every tacking case from the early history goes back to the early part of the 1900s up to the modern era, viewed this as solely a question for a court. And there was never any particular role for a jury in making these determinations. Sotomayor, which is, those older cases were at a time when equity and law were separated, and there were no rights to jury trials in equity. So once that distinction was done away with, you don't have the plethora of questions that you would have to deal with in a jury trial. And so there was never any view that this was the kind of factual determination that a court was taking substantial amounts of evidence on. Instead, the courts effectively compared the earlier mark to the later mark.    that a court was taking substantial amounts of evidence on. And so in a jury trial, they looked at the precedent, they consulted the relevant policy considerations, and then they made a judgment. So even though it may have preceded an equity, and I agree it doesn't shed dispositive light on it, the kind of analysis the courts used was not. Sotomayor, I doubt very much in those earlier cases that lawyers were thinking of consumer reports and pictures and videos and all the other things they present  I agree with you. Right. So I don't think it was that simple by their nature back then. But, Your Honor, the courts that today consider this a question of law apply that same kind of analysis. They look to the marks, they look to the relevant precedent and the guidance that can be drawn from those cases, and then they make a determination taking all of the relevant considerations into account. So I do think that same kind of mode of analysis that was used historically is still used today in the Sixth Circuit, in the Federal Circuit, and the courts that view this as a question of law. So that consistent historical approach at least, I think, adds some light or adds some depth to our contention that this is appropriately viewed as a question of law. As we alternatively argue, there are also, I think, reasons to think that this is a doctrine that has equitable underpinnings, that this is meant to establish fairness for the trademark litigants here. It's similar to unclean hands and latches that also pervade trademark law. And if this is viewed also as an equitable question, it certainly would be an issue that goes to the judge and not the jury. I'll reserve my time for a moment. Thank you. Roberts. Thank you, counsel. Mr. VandenBosch. Thank you, Mr. Chief Justice, and may it please the Court. The issue of trademark tacking should be treated as a question of fact for two principal reasons. First, the applicable standard examines whether two marks convey the same commercial impression. Not judicial impression, commercial impression to be viewed from the perspective of the relevant consumer. A jury with its collective consumer insight is always going to provide a better proxy. Sotomayor, why don't you deal with the example that the Chief Justice presented of the American Packing Company, or that was discussed earlier? What would the jury do with that knowledge? One critical consideration in the American Mobile Phone paging case is that in that case, the marks that were thought to be tacked were, in fact, used on very different products. And that's the type of extrinsic evidence that should be considered by a jury in determining whether there is truly a continuum. I'll take that a step further. In the Van Dine-Crotty case in the Federal Circuit, which is the first circuit to deem it a question of law, a critical consideration there was that the third-in-time mark had effectively purchased a first-in-time mark in order to try and leapfrog a second-in-time mark. In reality, in that case, the two marks that were thought to be tacked were used by two different parties on two different sets of products. To allow tacking in that case would be a legal fiction, clearly. There's no continuum. Although the Court there decided to treat tacking as an issue of law, it could have treated it as an issue of fact and still decided the issue because it's one of these outlier cases. And so it can be taken away from the jury, you're saying, if no jury could possibly find tacking appropriate, the Court could issue judgment as a matter of law. Absolutely, Justice Scalia. The judge can always set the out of bounds of what is permitted under the tacking doctrine. I also agree with Your Honor that if you look at the case law dealing with tacking, and by and large all of these cases that were cited in the papers were decided by judges due to the procedural posture of the case, there's a great amount of inconsistency. And it highlights the fact that seeking a body of precedent in this case is completely impracticable. Predictability in tacking law is not achievable. What we should aim for is reliability. Of course, you need some predictability for a judge to disallow a jury verdict as a matter of law, right? Yes, that's correct. I mean, you've got to admit there's some predictability. There's always some predictability, but it's very challenging still in tacking cases. But you emphasize that the consumer perspective is what's important. But there are other aspects of tacking as well that seem more suited to a court than to a jury. Well, the critical test, again, is commercial impression, which is a consumer standard. The other point is it involves a great amount of extrinsic evidence, which is evidence based, which should go to the jury. This case provides a perfect example of why marketplace context and extrinsic evidence is so critical, because in this case, the jury found priority on the basis of a 1994 advertisement, not just upon a single phrase, HANA Overseas Korean Club, but upon an advertisement that contained the mark HANA Bank seven times in the Korean language. So it could be viewed as a very simple priority case. The jury heard evidence that this advertisement was published in Korean language publications, that the relevant consumers of both parties were, by and large, Korean Americans who both spoke and read the Korean language, who viewed this ad as being a HANA Bank ad. It's no different from a bank for, say — I'm sorry, an advertisement for, say, Wells Fargo Home Loans, simply because it advertises that product doesn't mean consumers won't view this as an ad for Wells Fargo. Kennedy, if we — when we write this opinion, will we have to have in the back of our minds what effect it will have on likelihood of confusion, the likelihood of confusion issue? Is there some way that we should treat this as quite — quite discreet from that? Justice Kennedy, the likelihood of confusion issue is not part of the question presented. I recognize that. As a practical matter, I think that practitioners— Is it the elephant in the room or something like that? Well, I don't know what— Quite possibly. —the metaphor is, but— Well, if you look at the circuits that have adopted tacking as a matter of law, they've only done so, this is the Federal Circuit and the Sixth Circuit, because they also treat likelihood of confusion as a — as a matter of law. And picking up on that reasoning from Van Duyn-Crotty, every other circuit that has looked at it has also fallen in lockstep with how they treat likelihood of confusion. The majority of ten circuits obviously treat likelihood of confusion as a — as a factual matter, again, because it hinges very heavily on — on consumer impression. All circuits send likelihood of confusion to the jury for a determination. The — the individual likelihood of confusion factors are treated as issues of fact. One of those factors is a comparison of the two marks, just as you have in tacking, and that comparison is also always treated as an issue of fact. The question presented— But what about the point is that the question really is what was the scope? Of each — what was the scope of the original mark and the later one? Yes, Justice Ginsburg, the preemptive scope argument is one that did not arise until the reply papers. It's inconsistent in our view with the applicable standard, the commercial impression standard, because the Petitioner here is promoting a prospective analysis of the preemptive scope of the marks, which is — which is in contrast with the retrospective analysis we have in tacking, where we essentially look at two priority dates which have already occurred. It's a — it's a rear-view test, so — so they're entirely inconsistent. Furthermore, the — the scope issue is one that's already embodied in the likelihood of confusion test, because there you essentially compare two marks for their respective preemptive scope, and that is, by and large, a task for the jury as well. So the — the novel preemptive scope argument rings hollow. The issue presented here is a decidedly narrow one. Should this be an issue of fact or one of law? It is a similar issue that was presented to this Court in the Markman case, but it's quite distinct in the sense that Markman dealt with the issue of patent claim construction. And as Your Honor noted, that essentially involves the construction of a legal instrument. It's a highly sophisticated analysis. And in that case, the Court opined that it was appropriate to take this — this issue away from — from the jury because it was something that a judge simply did better. It was too sophisticated, because a nuanced interpretation of language in a patent claim could have a quite dramatic impact on the scope of the patent. Here, in contrast, we're talking about consumer impression. It's a relatively simple inquiry. And a body of jurors, with its collective insight, is going to provide a better perspective than a single judge sitting in relative isolation. The — What about obviousness in patent law? That's — that, I take it, is also a legal — legal issue. Obviousness is a factual issue, is my understanding. And also, the issue of — the ultimate issue of infringement, where we are to compare a patented device against an accused device, is ultimately a factual issue for the jury, just as it is in — in trademark law, where we compare two marks for potential infringement. Generally speaking, comparative analysis is often treated as a factual issue, whether it be a comparison of handwriting samples, et cetera. Petitioner also argued that — that there is a — a fairness element to the tacking analysis, and goes so far as to suggest that this is an equitable defense. This is not an equitable defense. This is something that goes to the affirmative elements of the plaintiff's case, those elements being priority and likelihood of confusion. Tacking is just one means of defeating the priority component. So — so the sense that simply because there is a fairness component, that does not turn this into an equitable defense. Equitable defenses arise once the plaintiff has established its affirmative case and effectively excused the defendant's conduct. Here again, we don't get to the point of — of considering defenses like you would have laches, unclean hands, et cetera. In this case, I should note, there were findings specifically of laches and — and unclean hands, and the judge appropriately took an advisory verdict from the jury. Ultimately, when the case was appealed to the Ninth Circuit Court of Appeals, the judge took the tacking component of the defense judgment, so the — the laches and unclean hands components are in play as well. Are there any of the features that your friend says have to go to the court that you think could not be addressed in jury instructions? I — I think certainly all of these elements could be addressed in jury instructions. In this case, it was the Petitioner who proposed the instruction. The proposed instruction did not even make reference, incidentally, of the legal equivalent standard that — that they're now promoting. It only mentioned the commercial impression standard, and the judge issued an instruction which was near identical to the one sought by the Petitioner. In certain cases, in — in some of these outlier cases, a judge could certainly instruct a jury to consider things relating to, say, foreign equivalents, whereas here we have a mark that was used in a different language. It could instruct the jury to consider specifically the relevant group of consumers. To a large extent, those types of instructions are already embodied in the — in the likelihood of confusion instructions. Would you repeat what you said about the other defenses, laches and what else? Laches and unclean hands. And those are still available on — on remand? Potentially so, yes. They've not been ruled on by the Ninth Circuit. If the Court has no further questions, I'll simply point out that both the intellectual — the, sorry, the International Trademark Association and the American Intellectual Property Law Association, as well as Professor McCarthy and his treatise on trademarks, agree with us wholeheartedly that this should be an issue of fact.  Thank you. Thank you, counsel. Ms. Harrington. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to start by responding to Petitioner's argument that the tacking inquiry is a legal inquiry only. Now, every court that has considered tacking has agreed that the standard for tacking is whether two marks create the same commercial impression. And in fact, in the district court in this case, that was the jury instruction that the Petitioner requested, exactly that instruction. That was the instruction that was given. There was no argument on appeal to the court of appeals that the jury was improperly instructed. It wasn't until this Court granted certiorari that Petitioner has changed its tune. Initially, Petitioner said, oh, no, the test for tacking isn't the commercial impression test. The test is whether two marks are legally equivalent. Then in the reply, it shifted gears again and said, oh, no, now the test is whether two marks have the same preemptive scope. Excuse me. But if you ask the decisionmaker to tell you whether two marks are legally equivalent or whether two marks have the same preemptive scope, the decisionmaker, even if that person was a judge, couldn't tell you the answer to that unless the judge knew what it means for two marks to be legally equivalent or for two marks to have the same preemptive scope. And the answer to both of those questions is that the marks have to have the same commercial impression. And if they have the same commercial impression, you can tack them, and then what we say about that is that they are legally equivalent. But that's just a label that we attach to two marks that we know can be tacked because they have the same commercial impression. That's not the test for inquiring whether you can actually tack two marks. Kagan You're saying essentially that legally equivalent just means equivalent for the purpose of deciding this legal question. That's right. But that doesn't tell you what question you need to ask to find out if they are legally equivalent. And same thing for preemptive scope. If you said, well, what's the preemptive scope of a mark, well, you figure that out by looking at its commercial impression. And so the legal equivalence and preemptive scope labels are just they just describe things about marks that can be tacked, but they don't tell you whether two marks can be tacked. They are things that you know after you have posed them. Sotomayor I'm a little confused about that because there is a plethora of quotations from the case law that tacking should be a limited thing and not expansive and his scope point.  Absolutely. Sotomayor And how do you communicate that to the jury? Because by nature, the evidence the jury is going to see is the change product and the question in terms of are they going to be confused by it, they are not because they are going to know it's the same manufacturer. Right. Well, I think it's important to keep separate the tacking question and the likelihood of confusion question. Tacking goes to priority, which is sort of one element of an infringement suit. Likelihood of confusion is a different element. Tacking is a constructive use doctrine that's about priority. And so when juries are comparing two marks for the purposes of determining whether they should be tacked, those are a different pair of marks than they are comparing when they are determining whether there is likelihood of confusion. Sotomayor That almost suggests to me that a lot of these older cases were decided wrong, unless the jury knows about how limited this is. And certainly the jury will know that because they will be instructed about when tacking is appropriate. And in this case, at Petitioner's request, the jury was instructed that the marks should be allowed to be tacked only if they create the same continuing commercial impression. I think the word same signals the narrowness of the doctrine. And certainly if a party were concerned that that standard tacking instruction were not sufficient, a party could ask for a more stringent type of instruction. That didn't happen in this case. Ginsburg What part does the judge's setting the boundaries by deciding the question either on summary judgment or as judgment as a matter of law, that I, I, my thought was that a judge would not let that the bounds of the doctrine were decided by the judge when he gives the question to the jury? Saharsky That's right. I mean, a judge in these cases plays the same important roles that a judge plays in every civil jury trial, which is to say that the judge decides the legal rules and instructs the jury on that, and then the judge also will decide merits determinations if the evidence that's presented could only lead to one reasonable conclusion about those determinations. And so when a judge decides a tacking issue on summary judgment or motion to dismiss, the judge is setting the outer bounds of the tacking doctrine, and just the same way it does in any other issue that comes up in a civil trial that would be tried to a jury. And we don't discount that. I mean, the judge plays a very important role. But ultimately, the question whether two marks give the same continuing commercial impression is a question that must be answered from the perspective of the ordinary consumer of the relevant goods. That is really essentially a factual question, and it's certainly true that a judge could decide that question, as in fact judges do in bench trials and in suits for injunctive relief and on motions for summary judgment. But the question isn't, when you have a jury in panel, the question isn't whether a judge could decide the question. The question is, could the jury also decide the question? Is there something about this question that a judge is really well equipped to answer and a jury is really ill equipped to answer? That was a situation in Markman. That's really an outlier situation, excuse me, and that doesn't come up here, because here, again, the focus is really on the consumer impression. And what's a jury? A jury is a collection of ordinary consumers. And so in some ways, a jury is actually better equipped to answer that question than a judge might be. Kagan I assume the same would be true of likelihood of confusion, if that's the argument, right, that the jury serves as a focus group in the same way for that question. Harrington Yes. And I think Petitioner may have misspoken when he suggested that, Petitioner's a circuit split on whether likelihood of confusion is a question for a jury or a question for a judge. I'm not aware of any circuit that is held as a question for a judge only. There's a circuit split on whether it's a question of law or a question of fact, and that affects how you review it on appeal. But as far as I know, every circuit treats it as a question for the jury. And one important element of the likelihood of confusion analysis in every circuit is a comparison of the similarity of two marks. Petitioner has conceded that a jury can make that comparison. That's a different – again, you're comparing different marks there than you are in this case, so it's a different degree of similarity you're looking for, but it's not different in kind, that kind of analysis. And there's no reason that I can think of why a jury would be well-equipped to answer that question, but not equipped to answer the consumer impression comparison question in the tacking case. Kennedy I'll check it out in my notes. I thought that there was a split on the likelihood of confusion issue on the point whether it goes to the judge or the jury. Harrington Not as far as I can tell. There's a split on whether it's a question of law or a question of fact. And, in fact, that's also the circuit split as to tacking. But, you know, in the Second Circuit, for example, they have held that likelihood of confusion is a question of law, but they review jury determinations on likelihood of confusion. They just review them without giving them much deference to the jury's ultimate determination. Those issues are decided by juries in the circuits that have held that it's a question of law, which I admit doesn't make a lot of sense and we think isn't necessarily the right way to do it. But if I could just say a word about Petitioner's reliance on history. Kennedy If I look confused by the answer, I am. I'll check it. Harrington So the circuit split is on law versus fact, not judge versus jury, for likelihood of confusion. Sotomayor What you're saying is those courts that think it's an issue of law, they still give it to a jury, but then ignore what the jury says? Harrington Some version of that. It's more complicated than that, and I don't want to – because that's not the issue here. I don't want to waste the Court's time, but it's some odd version of that. If I could just say a word about Petitioner's reliance on history. Petitioner identifies a number of cases in which judges, you know, going way back in which judges have decided tacking questions. But none of those cases are cases where a jury was impaneled to decide the infringement issue. Those are all cases that were decided at summary judgment or motion to dismiss, that were tried as bench trials, or that were suits for injunctive relief. And so the treatment of tacking in those cases tells us nothing about what we should do when a jury is actually impaneled. And as far as I know, Petitioner has not identified, and I'm not aware of, a single case from any period of time in which a jury was impaneled to decide an infringement issue, and the judge took the issue away from the jury. There just isn't such an example. And that's because generally when you have civil trials and you have a jury impaneled, these questions of ultimate determinations of factual issues, and even when they go to the ultimate legal determinations, they're decided by juries who are properly instructed. Now, I'd say that there's a lot of overtone in Petitioner's argument that we're worried about juries getting it wrong, and there's an argument that the jury got it wrong in this case. But I think that shouldn't drive your decision about whether juries or judges should decide this issue. Because juries, just like judges, can get things wrong all the time, and we have mechanisms in place to correct erroneous jury verdicts. You can argue that the jury was improperly instructed. That wasn't an argument that's ever been made in this case. Or you can argue that there wasn't sufficient evidence to support the jury's verdict. That was the argument that Petitioner made on appeal to the Ninth Circuit. The argument was rejected, and Petitioner has not asked this Court to review that determination. So however you feel about whether the jury got it right or wrong in this case, that shouldn't tell you – that doesn't tell you whether the jury should or shouldn't have had the right to answer the question. We think it's clearly a fact-based question, and it should go to the jury. Just one last point, if I could. The Petitioner has basically asserted that you should only really look at the two marks themselves, and that will almost always tell you what you need to do. And we look at precedent, you just look at those two marks. And as the Justices have suggested, it's, you know, just looking at how other marks in the past have been treated doesn't always tell you the full story. And even in the American mobile phone case, one of the dispositive considerations in that case was not just looking at the marks and how they looked and what the words were, and it wasn't just the fact that there was an intervening mark that was similar. They looked – the Court looked at – or the TTAB and then the Federal Circuit approved it – looked at how the two different marks had been used in the yellow pages and whether they had been used to advertise the same kind of products or different kind of products. And that just shows that tacking is a very context-specific inquiry. You need to look at how the – how the marks are used in advertising with respect to the products and with, you know, how the consumers actually perceive those marks. And of course, if a company is in a position where it's contemplating amending its mark and it wants to have some sort of certainty about whether that will be allowed, it can go to its consumers and do consumer surveys and say, you know, do you think if we changed it this way, would you still have the same consumer impression? It can, in other words, gather the evidence that it would have introduced at trial if tacking came up at trial. Also, and this – I guess this can be the last point, if there are no questions, but a mark owner can seek to amend its mark with the PTO. Roberts. Thank you, counsel. Mr. Hughes, you have six minutes left. Thank you, Your Honor. Three brief points. Our fundamental submission is that there is more going on here than simply the consumer impression test. I think there's a reason that this is called the legal equivalence test and not simply just consumer impression, and that's because what's happening here is a deeper legal judgment that corresponds to the legal fiction that is tacking. And I think what's deeper about this is just informing a jury that the question is, do these two marks have the same consumer impression, is going to not just lead to a different result, but a very different kind of test than if a court looks at these past examples to truly understand how narrow tacking is. I think if one just reads what the standard of continuing consumer impression, and then you look to the past cases, there is some confusion as to how these cases have come out, but these cases show just how narrow the doctrine must be. Those cases are what give the vibrance and the bite to the doctrine. Sotomayor, let's assume that commercial impression is a jury question, that we were to hold that. What would be the legal standard that a judge should apply in coming to legal conclusion? What is more – what is the legal conclusion? Your Honor, the judge is going to use the consumer impression, if that were factual, to understand what the preemptive scope of the first mark and the preemptive scope of the second mark. So as you suggested, that could be factual determining what those are. But what the legal aspect of that is, is asking how much of a change in the preemptive scope from the first mark to the second mark has there been, and then is that question – Ginsburg, in your blue brief, I know that's your yellow brief, it says this – everything is wrong up until now, because it's a legal question, preemptive scope of the old mark and of the new mark. That's spelled out very clearly in the reply brief, but I didn't see it in the blue brief. Well, Your Honor, I'd point to a couple of places. In page 19 of our blue brief, for example, we made the argument that if – and I'm quoting here – if a new mark creates a different right of exclusion than the original, tacking is not allowed. That was our controlling framework from the opening brief. And throughout our opening brief, we explained that the limitation that's essential on tacking is the competition, are the rights of the third parties. Every court that has explained that there's an outer bound on when tacking can be allowed has explained that that outer bound derives from the anti-competitive effects that would result from, retroactively, years later, expanding the initial trademark rights. So that was, I think, the theme of our opening brief, and that continued through into the yellow brief. The second point I'd like to make is that this is, in fact, truly a judicially created doctrine. And where this is a judicially created doctrine that is getting at a legal fiction, I think this is precisely the kind of circumstance where this legal test that we discussed must have a legal aspect or legal component that is put to the judge. So back to the question, what happens in that second stage in terms of what's the legal aspect of the test? The court will assess how much of a change has been made in the mark, and then it has to compare that against the original mark to see, was that reasonable, was that foreseeable, did people in the marketplace, could they have predicted that this kind of change was coming? That's the sort of legal determination that a court is going to be making that turns on its assessment of the interaction and the effect of the two marks. My final point is just one that's related particularly to this case. A Respondent made the contention that they had used Hana Bank in Korean in their initial advertising and suggested that that would be a basis for priority. As we explained in the yellow brief, though, no court of appeals has ever adopted the notion of foreign language equivalence into the concept of trademark tacking. And as we demonstrated, I think that the effects of that would be quite severe, because it would create a circumstance where any current markholder would be in jeopardy if there was unknown to them a similar, confusingly similar usage of that kind of mark in a foreign language which they would not have the ability to access. So while it's certainly true that foreign language equivalence can and should and is a doctrine that permits an affirmative trademark infringement claim, that is not what we have here. It's not a doctrine that can be used to, years after the fact, expand the scope of a trademark. Thank you. With respect to the foreign language. Sotomayor The foreign, the use or reliance on the foreign use of Hana alone. We did object to the use of foreign language equivalence. The Ninth Circuit specifically did not reach that issue. It stated in a footnote that because it was relying on the broader use of tacking, tacking between Hana Bank to Hana Overseas Korean Club, it didn't have to consider whether it could use foreign language equivalence. We certainly objected that that was an impermissible use. We think if the Court were to reach that, it should certainly hold that that is not a permissible use of foreign language equivalence, because the effects of it would be really quite substantial. Thank you, counsel. The case is submitted.